[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 23, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-11998

_____

D. C. Docket No. 00-00797 CV-ODE-1

ANDREW J. WAGNER,

Plaintiff-Appellant,

versus

DAEWOO HEAVY INDUSTRIES AMERICA CORPORATION,
JACK MOSLER, et al.

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(April 23, 2002)**

Before EDMONDSON, DUBINA and COX, Circuit Judges.

PER CURIAM:

Appellant/Plaintiff Andrew Wagner filed suit against Appellee/Defendants Daewoo Heavy Industries, Jack Mosler, George Valencia, David O'Dell, Donald Adams, and Kevin Ho,[1] alleging that Defendants "entered into a conspiracy to intimidate, harass, punish, and deter" him from testifying before a federal grand jury, in violation of 42 U.S.C. § 1985. The district court granted Defendants' 12(b)(6) motions to dismiss for failure to state a claim. We vacate the district court's dismissal and instruct the district court to allow Plaintiff leave to amend his complaint.

BACKGROUND

According to Plaintiff's complaint[2], Defendants were engaged in the shipping of heavy machinery to Cuba, in violation of a U.S. trade embargo. When customs officials discovered the illegal shipments, the federal government

---

[1]All individual defendants, except Adams and Valencia, are Daewoo executives. Although the complaint does not explicitly identify Valencia's position, it appears from the complaint that he is a Daewoo employee with some supervisory power over Plaintiff. Adams is an official with the company that Daewoo hired to transport the equipment involved in this case and from which Plaintiff was accused of accepting bribes.

[2]Because this case comes to us on a motion to dismiss, we accept all well-pleaded allegations of Plaintiff's complaint as true.

2

launched an investigation. Because of Plaintiff's role in arranging transportation for the equipment and filling out required Customs Invoice forms, Defendants were aware that Plaintiff would eventually be a witness, either at grand jury proceedings or at trial.

Plaintiff alleges that Defendants conspired to terminate him from his employment with Daewoo to deter him from testifying. Defendants, Plaintiff says, falsely accused Plaintiff of soliciting bribes from the trucking company owned by defendant Adams; Plaintiff was later fired -- before he was to testify -- for violating Daewoo work rules. Plaintiff claims that the reasons given for his termination were false and pretextual. Despite the alleged intimidation, Plaintiff eventually testified before a federal grand jury.

Plaintiff then filed this suit, alleging that Defendants had violated 42 U.S.C. § 1985. The district court granted the Defendants' motions to dismiss for failure to state a claim.

A copy of the complaint is appended to this opinion.

DISCUSSION

I.      Defendants' 12(b)(6) motion

A district court's dismissal for failure to state a claim under Rule 12(b)(6) is reviewed *de novo*.  All factual allegations in the complaint must be accepted as true, and all reasonable inferences are construed in the light most favorable to the plaintiff.  See Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  "A motion to dismiss is only granted when the movant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998) (internal quotations omitted).

Although a plaintiff is not held to a very high standard in a motion to dismiss for failure to state a claim, some minimal pleading standard does exist. The federal rules require "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quoting Conley v. Gibson, 78 S. Ct. 99, 103 (1957)); see also Fed. R. Civ. P. 8(a)(2). "Pleadings must be something more than an ingenious academic

exercise in the conceivable." Marsh v. Butler County, 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc) (quoting United States v. Students Challenging Regulatory Ag. Proc., 93 S. Ct. 2405, 2416 (1973)) (internal marks omitted). In addition, unsupported conclusions of law or of mixed law and fact are not sufficient to withstand a dismissal under Rule 12(b)(6). See Marsh, 268 F.3d at 1036 n.16; see also South Florida Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996) (stating, in dicta, that "as a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss").

We agree with the district court's conclusion that Plaintiff's complaint failed to state a claim. Section 1985(2), in relevant part, forbids conspiracies to "deter, by force, intimidation, or theat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully . . . ." 42 U.S.C. § 1985(2). Section 1985(3) provides that a party injured by such a conspiracy shall have a cause of action against the conspirators. The elements of a claim under Section 1985(2) are: 1) a conspiracy; 2) to deter a witness by force, intimidation or threat from attending or testifying before a United States court; 3) that results in injury to the plaintiff. See, e.g., Chahal v. Paine Webber, Inc., 725 F.2d 20, 23 (2d Cir. 1984); see also Morast v.

Lance, 807 F.2d 926, 929-30 (11th Cir. 1987). Plaintiff's allegations are insufficient to establish -- even by inference -- the second of the elements.[3]

Although we accept Plaintiff's complaint is sufficient to state that some kind of conspiracy existed, that showing alone is not enough to allow the complaint to withstand a 12(b)(6) motion. For Plaintiff to plead facts suggesting that he was fired for an undetermined improper reason is not enough; instead, the act Defendants agreed to take must constitute the use of force, intimidation, or threat to deter him from testifying.[4]

One cannot reasonably infer that, simply making false allegations against Plaintiff and by firing Plaintiff from his job -- before he was to testify -- Defendants had entered into a conspiracy to deter (that is, to discourage or to frighten) him from testifying. It is not to be expected that a group of conspirators would act to deter someone from testifying by just cutting off, in advance of his

---

[3]We recognize that a plaintiff need not "allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim." Aware Woman Center for Choice, 253 F.3d at 683. Still, "enough data must be pleaded so that each element of the alleged . . . violation can be properly identified." Id. (quoting (Quality Foods v. Latin Am. Agribusiness Dev. Corp., 711 F.2d 989, 995 (11th Cir. 1983)).

[4]The language of section 1985(2) supports a claim for retaliating against someone testifying in a federal proceeding. And, at one point, Plaintiff uses the phrase "to punish" to describe Defendants' acts. But, Plaintiff expressly disavowed a retaliation claim in his response to Defendants' motions to dismiss. In that response, Plaintiff stated that he was not pursuing a retaliation claim and stressed that his "claim arises solely from Defendants' behavior in attempting to *deter him from testifying* in a federal grand jury proceeding." (emphasis added). Plaintiff has asserted no retaliation arguments on appeal.

planned testimony, the most significant source of influence that the conspirators have over that person: his job. Firing someone from their job, amid false allegations of wrongdoing, seems as though it, by itself, would likely create animosity towards a former employer, thereby *encouraging* -- not deterring -- that fired employee's testimony against the company. Some details of the events leading to Plaintiff's termination, which support an inference of deterrence, need to be alleged. Cf. Swierkiewicz v. Sorema, N.A., 122 S. Ct. 992 (2002) (concluding that a complaint sufficiently pleaded age and national origin discrimination where "complaint detailed the events leading to [plaintiff's] termination . . . and included the ages and nationalities of at least some of the relevant persons involved with his termination" and included allegations that the plaintiff's boss had said that he wanted to "energize" plaintiff's department and allegations that the person replacing plaintiff was less qualified for the job).

In this context, the concept of deterrence must include some indication -- made before Plaintiff gave his testimony -- that a threat or act of intimidation was related to Plaintiff's planned testimony. Except by use of preventative force[5], a

_____

[5]In this case, we do not face a situation in which a defendant uses actual physical force (for example, assault, kidnaping, or murder) to prevent a witness from later testifying. Such a situation raises entirely different questions, and we express no opinion on the proper resolution of such a case.

By the way, Plaintiff also does not argue that he was terminated from his job and falsely accused of wrongdoing to affect negatively his credibility and, thereby, make it less likely he would be called to testify. We do not suggest that such an argument could establish a claim under Section

person ordinarily does not deter another from acting by simply harming that other person. Instead, a person deters by warning the other person that harm will befall that person if he acts in a certain way: for example, if you testify, you will lose your job. The warning, of course, need not be explicit. In many cases, it would be enough just to let another person know that one does not want that other person to do the thing (testifying, for example) he is planning on doing. Some kind of indication of the object of the deterrence, however, must exist to support an inference of deterrence in a case like this one. In this case, Plaintiff does not allege that a Defendant signaled to him that anyone was worried that he was planning to testify. Nor does he allege that some indication was given him to suggest that his termination was related to his planned testimony. What are Plaintiff's grounds for concluding that his firing was to prevent his testimony?

We do not mean to imply that termination of employment cannot be part of an overall scheme to deter. A deterrence claim might stem from an inestimable number of different threats and acts. But, other acts in addition to termination from a job on false grounds need to be alleged, and Plaintiff does not allege such additional acts. Plaintiff never alleges -- for example -- that a Defendant told him that the bribery allegations would go away if Plaintiff did not testify or that the

---

1985(2). We, however, observe that the argument has not been made.

allegations would be widely reported if he did testify. He also never alleges that a Defendant told him he could have his job back if he did not testify. And the complaint alleges no threats -- express or implied -- to him of more trouble in the future if he testified. Without allegations along these lines, we cannot reasonably infer from the complaint that Defendants acted to deter Plaintiff from testifying.

Compare the allegations in Plaintiff's complaint to those in <u>McAndrew v. Lockheed Martin Corp</u>, 206 F.3d 1031, 1034 (11th Cir. 2000) (en banc) (complaint alleged that supervisor in the defendant company had told plaintiff that "the company was very unhappy with [plaintiff's] decision to testify" and that supervisor had made clear that "it would not be in [plaintiff's] best interest to testify"), and <u>Brever v. Rockwell Int'l Corp.</u>, 40 F.3d 1119, 1123-24 (10th Cir. 1994) (plaintiffs told not to cooperate with FBI and that whistleblowers would be dealt with severely; plaintiffs also subject to unsafe working conditions and then told "[t]hat's what you get for making waves"). Without similar allegations, we cannot infer that Defendants conspired to deter Plaintiff from testifying.

The only statement in Plaintiff's complaint that suggests deterrence is the allegation that "Defendant's [sic] conspired to terminate [Plaintiff's] employment to intimidate, harass, punish, and deter him from testifying before a federal grand jury . . . ." (Complaint ¶ 39). But applying the ordinary rules of pleading, this

9

wholly conclusory allegation is insufficient to meet even the liberal standard of notice pleading.  See Marsh, 268 F.3d at 1036; see also Northern Trust Co. v. Peters, 69 F.3d 123, 129 (7th Cir. 1995) ("[C]onclusory statements of law . . . are not sufficient to defeat a motion to dismiss for failure to state a claim.").

•       Plaintiff's Request for Leave to Amend

In his brief, Plaintiff argues that even if we determine his complaint to be insufficient to satisfy the pleading standard, we must still vacate the district court's dismissal because it was error to dismiss the claim without granting leave to amend.  Plaintiff, however, never sought to amend his complaint in the district court, either before or after the motion to dismiss was granted; instead, he merely appealed the district court's adverse ruling.

In deciding this question, we are bound by our ruling in Bank v. Pitt, 928 F.2d 1108 (11th Cir. 1991).  In Bank, we decided that "[w]here it appears a more carefully drafted complaint might state a claim upon which relief can be granted," the district court must give the plaintiff a chance to amend the complaint instead of dismissing it with prejudice.  We also ruled that it is reversible error for the district

10

court to fail to do so even where the plaintiff never sought leave to amend in district court. See id. at 1112.

In our view, the cases cited by Defendants, see Long v. Satz, 181 F.3d 1275 (11th Cir. 1999) (district court was ruling on an amended complaint; therefore, plaintiff had an opportunity to amend); Burger King Corp. v. Weaver, 169 F.3d 1310 (11th Cir. 1999) (dismissal at summary judgment stage); Bankers Ins. Co. v. Florida Residential Prop. & Cas. Joint Underwriting Ass'n, 137 F.3d 1293 (11th Cir. 1998) (dismissal following Rule 12(c) motion for judgment on the pleadings), are distinguishable from this case. In this case, the district court was ruling on a 12(b)(6) motion; and the plaintiff had not taken advantage of the opportunity to amend as of right under Rule 15(a). Moreover, even if we did determine these cases to be directly on point, we would still be obligated to follow the rule of Bank, because each of these cases was decided after Bank. See Walker v. Mortham, 158 F.3d 1177, 1188-89 (11th Cir. 1998) (when faced with conflict between two panel decisions, rule in the Eleventh Circuit is that "a panel should look to the line of authority containing the earliest case"). Regardless of how we would resolve this matter if it were presented to us as a matter of first impression, we are bound by our holding in Bank. See In re Dickerson, 222 F.3d 924, 926 (11th Cir. 2000)

11

(following circuit precedent despite statement that "were we to decide this issue on a clean slate, we would not so hold").

Defendants cite our *en banc* decision in <u>Marsh v. Butler County</u>, 268 F.3d 1014 (11th Cir. 2001) (en banc), as compelling a different result. We cannot agree; <u>Marsh</u> is materially different from this case.

In the present appeal, Plaintiff has, in his briefing, expressly attacked the district court's dismissal on the ground that he ought to have been allowed a chance to amend his complaint before it was dismissed with prejudice; and plaintiff has expressly asked this court to remand to allow an amendment. In contrast, our opinion in <u>Marsh</u> makes no mention of the plaintiffs attacking the dismissal of the complaint on the grounds that plaintiffs ought to have been allowed a chance to amend the complaint before it was dismissed with prejudice. <u>Marsh</u> also makes no mention of the plaintiffs, in their briefs, asking this court to remand to allow amendment.[6] A case is not binding precedent for propositions not needed to decide the case. <u>See</u> <u>Tompkins v. United States</u>, 946 F.2d 817, 820 (11th Cir. 1991). What we decided in <u>Marsh</u> is that an appellate court -- given the arguments

_____

[6]In <u>Marsh</u>, we wrote that "Plaintiffs . . . did not seek to amend the complaint. Even after the district court dismissed their claims, Plaintiffs did not seek to amend the complaint. When Plaintiffs have had ample opportunity to request to amend their complaint, but have failed to do so, nothing compels us to remand to allow them to amend." <u>Marsh</u>, 268 F.3d at 1035, n.15. But "general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used." <u>Cohens v. Virginia</u>, 19 U.S. (6 Wheat.) 264, 399 (1821) (Marshall, C.J.).

presented in that case -- is not obligated to grant, *sua sponte*, a plaintiff leave to amend or to remand for an amendment to be considered. Because this case is like Bank and not like Marsh, we must follow Bank.[7]

An important caveat to Bank is that the district court need not grant leave to amend where even "a more carefully drafted complaint could not state a claim." Bank, 928 F.2d at 1112. That caveat, however, does not obviously apply in this case. Here, Plaintiff may be able to plead additional facts to establish the element of deterrence.[8]

Also relevant to the issue of whether Plaintiff can sufficiently cure his complaint is the district court's conclusion that Plaintiff could not state a claim under Section 1985(2) because he actually did testify. We disagree with that conclusion. In making its ruling, the district court relied upon the Seventh Circuit's decision in Rylewicz v. Beaton Servs., Ltd., 888 F.2d 1175 (7th Cir.

---

[7]This distinction is confirmed when one examines the briefs and record of Marsh. See, e.g., United States v. Glover, 179 F.3d 1300, 1302 n.5 (11th Cir. 1999) ("[G]iven the lack of clarity about the facts, we have looked at the record before the court in [a previous opinion], not to contradict the court's opinion, but only to clarify the meaning of its words."); United States v. Rey, 811 F.2d 1453, 1457 n. 5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts.").

[8]Our conclusion is not altered by the fact that Plaintiff has never actually represented -- either to us or to the district court --that he possesses such facts. See Bank, 928 F.2d at 1113 n.8 (stating that appellate court had not even looked at the proposed amended complaint filed on appeal by plaintiffs and writing that "we are *not* granting [plaintiffs] leave to amend; we are merely saying that the district court should have done so").

13

1989).  There, the court based its ruling in part on the requirement that a plaintiff bringing suit under Section 1985(2) must show that he has been injured by the defendants' acts.  See id. at 1181 ("Plaintiffs have simply not pointed to an injury or deprivation within the scope of Section 1985 . . . .").  In this case, however, Plaintiff does allege an injury within the scope of section 1985: the loss of his job.  In Haddle v. Garrison, 119 S. Ct. 489 (1998), the Supreme Court said that a third party's interference with an at-will employment relationship could constitute a cognizable harm under Section 1985.  See id. at 490.  If a conspiracy to induce someone else to fire an at-will employee can constitute injury under Section 1985, then a conspiracy actually to fire someone directly can also constitute injury under Section 1985.  See also Brever, 40 F.3d at 1128-29 (finding that plaintiff could still make out deterrence claim despite fact that she actually did testify).

We therefore VACATE the dismissal and REMAND the case, with instructions to allow Plaintiff leave to amend his complaint.[9]

VACATED AND REMANDED.

---

[9]The district court, in its order, dismissed the complaint against Defendant Ho for failure to prosecute.  Plaintiff does not challenge this ruling on appeal, and our decision here does not disturb that ruling.

EDMONDSON, Circuit Judge, concurring in the judgment:

Although I accept that the panel's resolution of this case is correct in the light of precedent, I write to express my opinion that the rule of Bank v. Pitt, 928 F.2d 1108 (11th Cir. 1991), is incorrect. I believe our court, **en banc**, should look at it.[1]

I think that a plaintiff who sits on his hands and does nothing to amend his complaint in the district court should -- ordinarily, at least -- not be granted on appeal a remand to amend. And, I think a district court should not be required to grant, *sua sponte*, leave to amend to a plaintiff who has never requested it.

If Plaintiff truly can allege facts that could save his complaint, he had ample opportunity to bring them to the district court's attention. In this case, the first motion to dismiss was filed on 15 May 2000; the district court did not grant the motion until 6 March 2001. In the light of the motion to dismiss, Plaintiff knew what the potential problems with his complaint were. But, in the nearly ten months between the motion to dismiss and the district court's order, Plaintiff never amended the complaint. Under Rule 15(a) he would have been allowed to amend as a matter of right: that is, he would not have even needed to ask for permission to

---

[1] By the way, the precedents upon which Bank seems to rely -- Thomas v. Town of Davie, 847 F.2d 771 (11th Cir. 1988); Friedlander v. Nims, 755 F.2d 810 (11th Cir. 1985); and Sarter v. Mays, 491 F.2d 675 (5th Cir. 1974) -- do not, in my view, compel the rule established by Bank.

amend. <u>See</u> Fed. R. Civ. P. 15(a) ("A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served."). Moreover, the federal rules provide plaintiffs, whose complaints have been dismissed for failure to state a claim, a process by which they can amend their complaints even after dismissal: a motion under Rule 59(e) to vacate the dismissal or under Rule 60(b) for relief from the judgment. <u>See, e.g.</u>, <u>Vanderberg v. Donaldson</u>, 259 F.3d 1321, 1326 (11th Cir. 2001). Plaintiff did not seek leave to amend his complaint under either of these procedures. Furthermore, "[a] motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." <u>Long v. Satz</u>, 181 F.3d 1275, 1279 (11th Cir. 1999). Plaintiff has never indicated to any court what additional facts he can honestly allege that could cure the deficiencies of his complaint.

The outcome of this case illustrates the negative effects of the <u>Bank</u> rule. It allows plaintiffs such as Plaintiff two bites at the apple, costing defendants and the courts unnecessary trouble and expense. By not amending his complaint in district court, Plaintiff -- who had legal counsel -- decided to take his chances with this complaint, which we have determined to be insufficient to state a claim. <u>Bank</u>, however, allows Plaintiff to reap all of the benefits and none of the risks of this

16

strategy: if the district court's ruling is reversed and the complaint is determined to be satisfactory, his case can go on; even if we confirm the district court's decision that the complaint is legally insufficient, Plaintiff knows he will have the opportunity to amend his complaint on remand. In effect, Bank turns cases like this one into interlocutory appeals: regardless of the outcome of the appeal, we know that further proceedings in the district court will be needed. Such appeals are "inherently disruptive, time-consuming, and expensive." Prado-Steiman v. Bush, 221 F.3d 1266, 1276 (11th Cir. 2000) (internal quotations omitted).

I do not accept that a motion to amend in district court is futile and, thus, not demanded of plaintiff, even where -- as here -- the district court has written that it believes "no set of facts could support Plaintiff's claim for relief." First, a real possibility exists a plaintiff could set out facts that the district court just did not contemplate and that would save the complaint, in the district court's view on reconsideration. Second, a plaintiff, who does not bother to bring forward in district court the additional facts he can allege, forces appellate courts to remand cases on the chance that such facts *might* exist. The mere possibility that such facts might exist is insufficient reason to compel the district court and the litigants in this case to bear the financial and time burdens of further litigation. Instead, we should require plaintiffs, while they are still before the district court, to represent --

17

either by amending or moving to amend or by making a motion under Rule 59(e) or 60(b) -- what additional facts they can allege that could save their complaint.

In this case, a real possibility exists that, upon remand, Plaintiff will amend his complaint, the district court will again dismiss the complaint, and Plaintiff will again appeal that dismissal. All of this costly and additional litigation could be avoided if we adopted the rule that a plaintiff must seek to amend his complaint in the district court and that requesting leave to amend for the first time on appeal is too late.[2]

---

[2]I observe that most other circuit courts seem to have adopted the rule I endorse. See Royal Bus. Group, Inc. v. Realist, Inc., 933 F.2d 1056, 1066 (1st Cir. 1991) (determining that, where plaintiff never took advantage of Rule 15(a) amendment as of right, despite being on notice that its claims were being challenged as insufficient, and where plaintiff never sought to reopen judgment in district court, a request to the appellate court for remand in order to amend was untimely); Graue Mill Dev. Corp. v. Colonial Bank & Trust Co., 927 F.2d 988, 992 (7th Cir. 1991) (same); Glenn v. First Nat'l Bank, 868 F.2d 368, 370-71 (10th Cir. 1989) (same); see also Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 76 (2nd Cir. 1998) (rejecting plaintiff's argument that district court erred in dismissing claim without leave to amend because plaintiff "never requested leave to amend from the district court, and . . . has made no showing that he would be able to amend his complaint in a manner that would survive dismissal"); Cinel v. Connick, 15 F.3d 1338, 1346 (5th Cir. 1994) (finding that plaintiff, following 12(b)(6) dismissal of suit, need not be granted leave to amend when such leave is sought for the first time on appeal); Guam v. American President Lines, 28 F.3d 142, 150-51 (D.C. Cir. 1994) (same); Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1041-42 (6th Cir. 1991) (writing, in dicta, that "a district court does not abuse its discretion in failing to grant a party leave to amend when such leave is not sought"). At least one circuit has gone even farther, holding that a district court does not abuse its discretion in denying a motion for leave to amend that is filed in district court, but filed after a rule 12(b)(6) motion has been granted. See Parnes v. Gateway 2000, Inc., 122 F.3d 539, 550-51 (8th Cir. 1997). But see District Council 47 v. Bradley, 795 F.2d 310, 316 (3d Cir. 1986) (ruling that, when a section 1983 claim is dismissed because it lacks required specificity or for another readily curable defect, a plaintiff must be given leave to amend, even where the plaintiff initially appeals dismissal rather than seeking leave from the district court).

18

I recognize, however, that it might not be fair to apply the new rule I endorse to this case and to other cases now on appeal. The plaintiffs in those cases have likely relied upon the rule of <u>Bank</u> in declining to amend their complaints before the district court and in immediately appealing the dismissal of their complaints. We have accepted that, in some instances, rulings can be applied in a purely prospective fashion; this case represents an appropriate instance.[3] Therefore, I would apply the new rule only to cases in which notice of appeal was filed after the announcement of the new rule.

In conclusion, if I were not overcome by <u>Bank</u>, I would affirm the ruling of the district court. But because I worry it would be unfair to apply a new rule, contrary to <u>Bank</u>, to this Plaintiff and because I recognize the importance of our prior-precedent rule, I concur in the judgment of the court.

---

[3]A new rule of law may be applied prospectively if the following conditions are met: "1) the decision adopting the new rule does so . . . by overruling clear past precedent . . .; and 2) the application of the old rule in the instant case does not contravene the purpose and operation of the provision being interpreted; and 3) application of the new rule in the instant case would be inequitable." <u>Kirkland v. Midland Mortgage Co.</u>, 243 F.3d 1277, 1281-82 (11th Cir. 2001) (internal quotations omitted); <u>see also</u> <u>McKinney v. Pate</u>, 20 F.3d 1550, 1566 (11th Cir. 1994) (en banc). I think that all three of these criteria are satisfied in this case.