[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-11402
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 22, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-60823-CV-WPD

MAILPLANET.COM, INC.,
a Corporation of the District
of Columbia,

Plaintiff-Appellant,

versus

LO MONACO HOGAR, S.L.,
a Limited Liability Company of Spain,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 22, 2008)**

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Mailplanet.com appeals the district court's order dismissing as moot its complaint against defendant-appellee Lo Monaco Hogar for declaratory and injunctive relief regarding the registration of the Internet domain name lomonaco.com. After review, we affirm the district court's dismissal.

## I. BACKGROUND

In 2003, Mailplanet.com had a business plan to purchase Internet domain names that were common surnames and allow customers to use such domain names for personal email addresses.[1] For example, Mailplanet.com registered the domain name garcia.com and offered customers an email address at that domain name, such as michael@garcia.com. Using census statistics, Mailplanet.com identified common surnames and targeted the domain names matching such surnames for purchase. One such domain name was lomonaco.com.

In December 2003, Mailplanet.com entered into a contract with Internet registrar Monikor Online Services to register lomonaco.com. In the contract, Mailplanet.com agreed to abide by the Uniform Domain Name Dispute Resolution Policy ("UDRP"), a procedure for resolving challenges to the registration of a

---

[1] A domain name is an alphanumeric designation that allows an Internet user to access a particular website. See Sallen v. Corinthians Licenciamentos LTDA, 273 F.3d 14, 19 & n.3 (1st Cir. 2001). A domain name consists of the top level domain (such as .com, .net, or .org), which is preceded by the second level domain (a combination of letters, numbers, or some symbols). Id. at 19. For example, in the domain name uscourts.gov, ".gov" is the top level domain name and "uscourts" is the second level domain name. Id.

particular domain name that is identical or confusingly similar to a trademark held by a complainant.

In 2004, Mailplanet.com changed its business plan and stopped offering new email accounts. For domain names, such as lomonaco.com, that had never been utilized for email accounts, Mailplanet.com employed a "parking service" to earn revenue from advertisers.[2]

In August 2005, Lo Monaco Hogar, a mattress company in Spain, filed a complaint under the UDRP as to Mailplanet.com's registration of lomonaco.com. The World Intellectual Property Organization ("WIPO") reviewed the complaint. In December 2005, a WIPO panel concluded lomonaco.com was confusingly similar to Lo Monaco Hogar's Spanish trademarks utilizing the words "Lo Monaco" and ordered Monikor Online Services to transfer the registration of lomonaco.com from Mailplanet.com to Lo Monaco Hogar.

Before any transfer was made, Mailplanet.com filed a complaint in district court against Lo Monaco Hogar seeking declaratory and injunctive relief under 15

---

[2]A "parking service" displays a list of words relating to products or services offered by advertisers on the domain name's Internet website. When a visitor to the domain name's website clicks on one of these displayed words, the visitor is linked to the website of the advertiser. The owner of the website is in turn paid a small fee for this referral.

U.S.C. § 1114(2)(D)(v) and 28 U.S.C. § 2201.[3]  Section 1114 is a provision of the

Lanham Act, 15 U.S.C. § 1051 et seq., that was amended by the

Anticybersquatting Consumer Protection Act ("ACPA").  Section 1114(2)(D)(v)

provides that:

> A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter.  The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

15 U.S.C. § 1114(2)(D)(v).  Lo Monaco Hogar does not dispute that the WIPO

panel decision constitutes a "policy" within the meaning of § 1114(2)(D)(v) and

that the decision ordered a transfer of lomonaco.com from Mailplanet.com to Lo

Monaco Hogar.

Mailplanet.com's complaint requested that the district court grant it this

relief: (1) "[a] DECLARATION that MAILPLANET'S registration of the domain

name is lawful, and does not violate any enforceable right of LO MONACO

HOGAR in the United States of America"; and (2) "[a]n injunction under 15

U.S.C. [§] 1114(2)(D)(V) including reactivation of the domain name and

---

[3]Section 2201, known as the Declaratory Judgment Act, provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).

4

maintenance of registration to Plaintiff, to prevent transfer to the Defendant."

Mailplanet.com also sought costs, fees, and other relief the court deemed proper.

After Lo Monaco Hogar answered, Mailplanet.com moved for summary judgment. Lo Monaco Hogar responded to the summary judgment motion and moved to dismiss Mailplanet.com's complaint as moot. Lo Monaco Hogar explained it had decided to curtail its online business activities and to forego its claim to lomonaco.com. Lo Monaco Hogar had informed Mailplanet.com and Moniker Online Services of its decision. Because Lo Monaco Hogar had conceded the only thing at issue (the ownership of lomonaco.com), Lo Monaco Hogar argued there was no case or controversy for the district court to decide.

Mailplanet.com responded that Lo Monaco Hogar's concession of Mailplanet.com's ownership of lomonaco.com did not render the case moot because there were other issues remaining, including, <u>inter alia</u>, the legality of Mailplanet.com's past and present use of lomonaco.com.[4] Mailplanet.com argued a declaration of its rights was necessary to preempt future litigation by (1) Lo Monaco Hogar for trademark infringement or for bad faith acquisition and use of lomonaco.com, and (2) other parties who may rely on the WIPO panel's adverse

---

[4]Although Mailplanet.com cited other allegedly live issues in the case in the district court, it only references its use of lomonaco.com on appeal.

5

findings to Mailplanet.com's detriment. Mailplanet.com suggested Lo Monaco Hogar's challenge to Mailplanet.com's ownership of lomonaco.com was reasonably likely to recur in the future because Lo Monaco Hogar never admitted that it has no rights to the "Lo Monaco" mark in the United States.

The district court granted Lo Monaco Hogar's motion to dismiss because Mailplanet.com failed to show there was still a substantial controversy to which the court could grant meaningful relief after Lo Monaco Hogar consented to Mailplanet.com's ownership of lomonaco.com. The district court noted that Moniker Online Services had not yet transferred lomonaco.com to Lo Monaco Hogar and a declaration as to the lawfulness of Mailplanet.com's use of lomonaco.com would constitute an inappropriate advisory opinion. The district court stated the voluntary cessation exception to the mootness doctrine did not apply here because Lo Monaco Hogar had not been charged with any illegal or offensive conduct. Further, even if Lo Monaco Hogar did bring suit against Mailplanet.com in the future regarding lomonaco.com, it likely would be

precluded.[5] Because there was no live case or controversy, the district court dismissed Mailplanet.com's complaint as moot.

The district court also denied Mailplanet.com's motion for reconsideration. Mailplanet.com filed a timely appeal.[6]

## II. DISCUSSION

A case is moot when it no longer presents a "live" issue or the parties lack a legally cognizable interest in the outcome, because, at that point, a court can no longer give meaningful relief. Troiano v. Supervisor of Elections in Palm Beach County, 382 F.3d 1276, 1282 (11th Cir. 2004). The mootness doctrine derives directly from Article III's limitation on federal court jurisdiction to the consideration of "Cases" and "Controversies" because a moot action cannot be characterized as an active case or controversy. Id. at 1281-82. If an event occurring after the filing of a suit deprives the court of the ability to give the

---

[5]The district court also determined Mailplanet.com was not eligible for damages or attorney's fees for two reasons. First, Mailplanet.com did not allege that lomonaco.com had been suspended based on a "knowing and material misrepresentation" so as to recover damages and fees under 15 U.S.C. § 1114(2)(D)(iv). Second, Mailplanet.com had not asserted a violation of 15 U.S.C. § 1125 so as to recover damages and fees under 15 U.S.C. § 1117. Mailplanet.com does not challenge these determinations by the district court on appeal. In any event, we point out that Mailplanet.com never prays for any damages in its complaint.

[6]We review de novo the legal question of whether a case is moot. Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1182 (11th Cir. 2007).

parties meaningful relief, then the case is moot and must be dismissed. Id. at 1282.

The district court properly dismissed Mailplanet.com's complaint as moot. This litigation arises from Lo Monaco Hogar's challenge to Mailplanet.com's registration of lomonaco.com and its desire to have lomonaco.com transferred to it. After Lo Monaco Hogar was successful in the WIPO proceedings, Mailplanet.com filed a complaint in federal court seeking (1) a declaration that its registration of lomonaco.com was lawful and did not violate Lo Monaco Hogar's rights in the United States, and (2) an injunction preventing transfer of lomonaco.com to Lo Monaco Hogar. Lo Monaco Hogar's decision to concede Mailplanet.com's ownership of lomonaco.com and to forgo its request for a transfer of lomonaco.com from Mailplanet.com effectively provides Mailplanet.com the relief it sought in its complaint and resolves the dispute between the parties that gave rise to the litigation.

Mailplanet.com relies on Sallen v. Corinthians Licenciamentos LTDA, 273 F.3d 14 (1st Cir. 2001), but our conclusion is consistent with that decision. The First Circuit concluded that a live controversy existed because (1) both parties were still claiming exclusive rights to the same domain name, (2) the domain name had been transferred to the complainant, and (3) the complainant was using the

8

domain name. Id. at 25. Here, in contrast, Lo Monaco Hogar has relinquished its claim to the ownership of lomonaco.com. Furthermore, lomonaco.com has not been transferred to Lo Monaco Hogar and is not being used by Lo Monaco Hogar.

We also reject Mailplanet.com's claim that there is still a live controversy between the parties as to whether its "use" of lomonaco.com was lawful. Mailplanet.com is correct that § 1114(2)(D)(v) allows it to file an action "to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter." 15 U.S.C. § 1114(2)(D)(v). However, Mailplanet.com's complaint sought only a declaration that its "registration" of lomonaco.com was lawful. Although Mailplanet.com's complaint stated in the facts section that "MAILPLANET reasonably believes its registration and use of the domain name lomonaco.com was and is lawful under the Lanham Act," its prayer for relief does not seek a declaration regarding its "use" of lomonaco.com. Moreover, Lo Monaco Hogar does not claim any right to the domain name lomonaco.com, and thus there are no adverse parties or disputed claims as to that domain name. Consequently, there is no live controversy between the parties as to Mailplanet.com's use of lomonaco.com.[7]

---

[7]We reject Mailplanet.com's argument on appeal that it should have been allowed leave to amend its complaint to include a prayer for relief regarding its use of lomonaco.com. See, e.g., Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) (en banc)

9

Finally, Mailplanet.com's concerns–that Lo Monaco Hogar may change its mind and bring another suit in the future regarding lomonaco.com–do not alter our conclusion. It is true that in deciding mootness issues we often look to whether there is a reasonable expectation that the voluntarily ceased activity will actually recur after the case terminates. See Troiano, 382 F.3d at 1282-83. Here, the relevant behavior by Lo Monaco Hogar was its challenge to Mailplanet.com's registration of lomonaco.com and request to have registration of lomonaco.com transferred to it. Lo Monaco Hogar has ceased this behavior pursuant to a change in its business plan, has raised no counterclaim against Mailplanet.com in this suit, and has given no indication that it will bring suit against Mailplanet.com in the future regarding lomonaco.com.[8] To the extent the voluntary cessation doctrine is applicable to this action seeking a declaratory judgment and injunctive relief, we conclude Mailplanet.com failed to show there is a reasonable expectation that Lo Monaco Hogar will resume its challenge to Mailplanet.com's ownership of lomonaco.com and seek to bring legal action against it in the future.

("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").

[8]Further, if Lo Monaco Hogar decided to bring suit against Mailplanet.com regarding lomonaco.com at a later date, it would be forced to deal with the preclusive effect of its actions in this case.

10

Based on the above reasons, we affirm the district court's order dismissing Mailplanet.com's complaint as moot.

**AFFIRMED.**